# 13-231

*To Be Argued By:*
MICHAEL E. RUNOWICZ

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

### Docket No. 13-231

―――――

UNITED STATES OF AMERICA,

*Appellee,*

-vs-

RANDALL REDD, aka Boo, ANSON McPHAIL, aka Humpty, DENNIS RODRIGUEZ, aka D,

(For continuation of caption, *see* inside cover)

―――――

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF CONNECTICUT

### BRIEF AND APPENDIX
### FOR THE UNITED STATES OF AMERICA

DEIRDRE M. DALY
*Acting United States Attorney*
*District of Connecticut*

MICHAEL E. RUNOWICZ
*Assistant United States Attorney*
SANDRA S. GLOVER
*Assistant United States Attorney (of counsel)*

TRACEY RAY, aka Duce, DEAN SIMS, JAMES HARRIS, aka Bo, WILLIE ANDERSON, aka Marvelous, aka Marv, VINCENT BLACK, aka Cool V, KEITH KARLAC, MARVIN OGMAN, aka Bub Luv, KENNETH FORD, JOSUE GONZALEZ, aka Coco, SAQUEAN CLOUD,

*Defendants,*

CHAS GLENN,

*Defendant-Appellant.*

# Table of Contents

Table of Authorities ............................................. iii

Statement of Jurisdiction ................................... vi

Statement of Issue Presented for Review......... vii

Preliminary Statement.......................................1

Statement of the Case  ........................................2

Statement of Facts and Proceedings
Relevant to this Appeal .......................................3

A. The petition alleging violations of conditions
     of supervised release.......................................3

B. The State court proceedings ...........................5

C. The federal district court proceedings ............9

Summary of Argument ..................................... 12

Argument............................................................ 13

I.  The district court did not abuse its
     discretion in finding that Glenn committed
     another crime when he had been convicted
     for two separate drug offenses in State
     court.............................................................. 13

A. Governing law and standard of
   review.......................................................... 13

B. Discussion ................................................ 14

Conclusion ....................................................... 25

Addendum

Government Appendix

# Table of Authorities

Pursuant to "Blue Book" rule 10.7, the Government's citation of cases does not include "certiorari denied" dispositions that are more than two years old.

## Cases

*North Carolina v. Alford*,
   400 U.S. 25 (1970)..................................*passim*

*Burrell v. United States*,
   384 F.3d 22 (2d Cir. 2004) ........................... 18

*Fischl v. Armitage*,
   128 F.3d 50 (2d Cir. 1997) ...................................14

*State v. Daniels*,
   726 A.2d 520 (Conn. 1999),
   *overruled on other grounds*,
   *State v. Singleton,* 876 A.2d 1
   (Conn. 2005) ................................................16, 19

*State v. Faraday*,
   842 A.2d 567 (Conn. 2004) .................... 16, 18

*United States v. Carlton*,
   442 F.3d 802 (2d Cir. 2006) ................... 14, 15

*United States v. Carthen*,
   681 F.3d 94 (2d Cir. 2012), *cert. denied*,
   133 S. Ct. 837 (2013)..................................... 14

iii

*United States v. Chambers*,
    429 F.2d 410 (3d Cir. 1970) (per curiam) .... 15

*United States v. Dempsey*,
    479 Fed. App. 935 (11th Cir. 2012) ............. 21

*United States v. Gigante*,
    94 F.3d 53 (2d Cir. 1996) ............................ 14

*United States v. Gordon*,
    961 F.2d 426 (3d Cir. 1992) ........................ 15

*United States v. Marshall*,
    371 F.3d 42 (2d Cir. 2004) .......................... 14

*United States v. Nguyen*,
    465 F.3d 1128 (9th Cir. 2006)...................... 19

*United States v. Poellnitz*,
    372 F.3d 562 (3d Cir. 2004) ............. 19, 20, 22

*United States v. Savage*,
    542 F.3d 959 (2d Cir. 2008) ................... 23, 24

*United States v. Spencer*,
    640 F.3d 513 (2d Cir. 2011) ........................ 14

*United States v. Subil*,
    495 Fed. App. 963 (11th Cir. 2012) ............. 21

*United States v. Thomas*,
    239 F.3d 163 (2d Cir. 2001) ........................ 14

*United States v. Verduzco,*
    330 F.3d 1182 (9th Cir. 2003).......................21

## Statutes

18 U.S.C. § 3231...................................................vi

18 U.S.C. § 3582....................................................2

18 U.S.C. § 3583 ................................................14

18 U.S.C. § 3742..................................................vi

21 U.S.C. § 846.....................................................2

28 U.S.C. § 1291..................................................vi

Connecticut General Statute § 21a-277.......... 5, 7

## Rules

Fed. R. App. P. 4 ................................................vi

v

## Statement of Jurisdiction

The United States District Court for the District of Connecticut (Janet C. Hall, J.) had subject matter jurisdiction over this federal criminal prosecution under 18 U.S.C. § 3231. The district court revoked the defendant's supervised release and sentenced him to 36 months' imprisonment on July 25, 2012. Appendix ("A__") 14. Judgment entered on July 30, 2012. A14. On August 6, 2012, the defendant filed a timely notice of appeal pursuant to Fed. R. App. P. 4(b). A14; A122. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## Statement of Issue
## Presented for Review

Is a State conviction, entered on a guilty plea under *North Carolina v. Alford*, sufficient to establish, by a preponderance of the evidence, that a defendant has committed another offense in violation of the mandatory condition of supervised release that the "defendant shall not commit another federal, state or local offense"?

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

### Docket No. 13-231

_____

UNITED STATES OF AMERICA,

*Appellee,*

-vs-

CHAS GLENN,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF CONNECTICUT

## BRIEF FOR THE UNITED STATES OF AMERICA

### Preliminary Statement

The defendant, Chas Glenn, appeals from the district court's order revoking his supervised release. The district court found that Glenn's two State drug convictions established that Glenn had violated the condition of supervised release that he not commit another offense. Glenn claims that because both convictions had been entered as *Alford* pleas, neither conviction was sufficient to support the court's finding.

As set forth below, the district court properly relied upon Glenn's State court convictions to support its finding—by a preponderance of the evidence—that Glenn violated the conditions of his supervised release. The district court's judgment should be affirmed.

## Statement of the Case

On January 4, 2005, Chas Glenn pleaded guilty to conspiring with others to possess with the intent to distribute and to distribute five grams or more of cocaine base in violation of 21 U.S.C. § 846. A6. On October 4, 2005, the district court (Janet C. Hall, J.) sentenced Glenn principally to 60 months' imprisonment to be followed by four years of supervised release. A8; Government Appendix ("GA__") 1. On June 23, 2008, the district court reduced Glenn's 60-month sentence to 50 months under 18 U.S.C. § 3582(c)(2). A11-12. All other provisions of the original judgment were ordered to remain in effect. A12.

On April 14, 2011, the United States Probation Office filed a petition seeking revocation of the defendant's supervised release. A12; A16-18.

On July 25, 2012, after a hearing, the district court revoked Glenn's supervised release and imposed a sentence of 36 months' imprisonment, with 15 of those months to run concurrently with a State sentence the defendant was then serving. A13-14; A111-112; A118-19.

2

The defendant is currently serving the sentence imposed.

## Statement of Facts and Proceedings
## Relevant to this Appeal

### A. The petition alleging violations of conditions of supervised release

After serving his 50-month term of imprisonment, Glenn began serving his term of supervised release on November 27, 2010. A16. A few months later, the Probation Office received notice that Glenn had been arrested on State drug charges on two separate occasions. Accordingly, on April 14, 2011, the Probation Office filed a petition seeking an arrest warrant for Glenn for alleged violations of the conditions of supervised release. A12; A16-18.

The petition alleged that Glenn had violated several conditions of his supervised release, with the factual allegations focused largely on his two State arrests.[1] First, the petition noted that on January 22, 2011, Glenn had been arrested by the Ansonia Police Department on drug charges, including possession of narcotics, possession of drug paraphernalia and illegal manufacture,

---

[1] The petition also alleged that Glenn had failed to notify the Probation Office of his whereabouts on two occasions and had a sporadic work history. A18. The district court did not rely on these alleged violations and so they will not be discussed further.

3

distribution or sale, all in violation of Connecticut statutes. A18. According to the petition, at the time of his arrest, Glenn "was found in possession of 7.5 grams of crack cocaine along with 43 individual plastic bags." A18.

The second arrest occurred on March 8, 2011, when the New Haven Police Department arrested Glenn for various offenses, including, *inter alia*, possession of a narcotic substance, possession of a narcotic substance with intent to sell, reckless endangerment and engaging an officer in pursuit. A18. As related in the petition, New Haven police officers saw Glenn driving a car with an inoperable tail light in a location "known for violence and narcotic activity." A18. As the officers approached Glenn, he drove away, striking a police cruiser as he took off. The police followed him, and during the pursuit, Glenn drove recklessly through traffic, once turning off his head lights, and once slamming on his brakes—causing a following police cruiser to crash into his car—before speeding off again. Eventually, Glenn jumped out of the car while it was still moving, and after a short foot chase, the police arrested him. A18.

At the time the petition was filed with the district court, both of these matters were pending in State court. A18.

 On the basis of the allegations outlined above, as relevant here, the Probation Officer asserted that Glenn was in violation of mandato-

ry condition #1 of his supervision. That provision
directs that "[t]he defendant shall not commit
another federal, state, or local offense." GA4; *see*
A16. In addition, the petition alleged that
Glenn's conduct violated standard conditions #7
and #8, namely that the defendant shall not pur-
chase, possess, use, distribute or administer any
controlled substance, and that the defendant
"shall not frequent places where controlled sub-
stances are illegally sold, used, distributed, or
administered." A16.

## B.  The State court proceedings

On September 20, 2011, Glenn resolved the
charges pending from his January 2011 arrest in
Ansonia. A22. In particular, Glenn pleaded
guilty under the *Alford*[2] doctrine to possession of
narcotics with intent to sell in violation of Con-
necticut General Statute § 21a-277(a). A22. At
the time of the plea, the State prosecutor ad-
vised the court of the factual basis for the plea:

> [T]his defendant was arrested after police
> received a complaint from an individual
> who identified herself as a close friend of
> the defendant. She indicated to the police
> that the defendant left her residence car-
> rying a large quantity of narcotics, to wit:
> crack.

---

[2] *North Carolina v. Alford,* 400 U.S. 25 (1970).

5

Police entered the location described, observed an individual that matched the description and approached the individual who identified himself as Mr. Chas Glenn. The officer patted him down, immediately felt on feel a small bulge which he recognized from his experience as a pungent drug. Mr. Chas Glenn was in possession of 43 small Zip-Loc bags each containing a large white rock-like substance which tested positive for narcotics, to wit: crack cocaine.

A22-23.

After hearing this recitation, the court conducted a canvas of the defendant. Among other issues covered during the canvas, the court confirmed that Glenn was on federal "probation" at that time. The court asked Glenn whether he understood "that a plea of guilty while on probation is a violation of probation, and it's between you and your probation officer to decide what happens." A24. Glenn answered, "Yes." A24. In another part of the canvas, the court confirmed that Glenn was pleading guilty under *Alford* and explained the operation of that doctrine:

You heard the prosecutor recite the facts. You pled guilty under the Alford Doctrine. The Alford Doctrine says you don't admit some or all of the facts, but knowing what the State has in its file and what it could prove at trial, you'd rather plead guilty

6

under the Alford Doctrine and accept this offer rather than go to trial where there's a substantial likelihood that you could be convicted of this or other charges and suffer a more severe penalty. In essence, you want to plead guilty and take the deal; is that correct?

A25-26. Glenn responded, "Yes." A26.

At the conclusion of the canvas, the court found that Glenn had entered his plea "knowingly, intelligently and voluntarily," and with the effective assistance of counsel. A26. Further, the court found that "[t]here's a factual basis for the plea." A26. With these findings, the court accepted the plea and entered a finding that Glenn was guilty of possession of narcotics with intent to sell. A26. The court sentenced Glenn to two and one half-years' imprisonment. A27.

On October 12, 2011, less than one month after Glenn resolved the Ansonia case, he appeared in Superior Court in New Haven to resolve the charges from his March arrest in that City. At that time, he pleaded guilty under *Alford* to possession of narcotics with intent to sell, in violation of Connecticut General Statute § 21a-277(a). A31. The State prosecutor recited the factual basis for the plea:

[O]n April 8, 2011, New Haven Police initiate a motor vehicle stop, defendant flees the scene, later apprehended. He's found

to be in possession . . . [of] three cell phones, money in various denominations as well as four eight balls. Portions of that substance was tested, your Honor, and did come back positive for cocaine.

A32.

During an extensive colloquy with Glenn, the court confirmed that Glenn was pleading guilty under *Alford*:

Now I understand . . . that you're entering your plea under the Alford Doctrine. By doing so, you're telling me you dispute some of the facts as alleged by the State but you acknowledge that the State likely has enough evidence to convict you of these offenses and that you made the decision after discussing it with your attorney that it would be in your best interest to plead guilty, . . . and accept the agreed upon disposition rather than risk going to trial and potentially facing greater sentences upon conviction. Is that right?

A35. Glenn responded, "Yes." A35.

After the complete colloquy, the court found that Glenn's plea was knowing and voluntary, and made with the assistance of competent counsel. A38. Further, the court found that "[t]here's a factual basis for the plea . . . ." A38. On the basis of these findings, the court accepted the plea and entered a finding that Glenn was

8

guilty of the offense. A38. The court sentenced
Glenn to two and one-half years' imprisonment,
to be served concurrently with the sentence im-
posed on his Ansonia case. A38-39.

## C. The federal district court proceedings

After Glenn's State court cases were resolved,
he made his initial appearance on the federal
supervised release warrant on May 3, 2012. A13.
At the time of the initial presentment, Judge
Hall ensured that Glenn had been given an op-
portunity to review and discuss with counsel the
report of violation of supervised release. A43.

Judge Hall reviewed the alleged violations
with Glenn, noting that he had been charged
with two violations of the first mandatory condi-
tion, *i.e.*, that Glenn would not commit another
crime. A44. As Judge Hall noted, the report al-
leged that Glenn had violated this condition with
his arrests, and his subsequent convictions and
sentences, on drug charges. A44. After discuss-
ing the other alleged violations contained in the
report, Judge Hall advised Glenn that if his su-
pervision were to be revoked, his guideline sen-
tencing range would be 30 to 37 months.[3] A45.

Judge Hall then notified Glenn that he was
entitled to a hearing with the assistance of coun-

---

[3] As the court later explained, the guideline range
was capped by the 3-year statutory maximum, so the
final guideline range was 30-36 months.

9

sel for the court to decide if a violation of supervised release had occurred. A45-46. The court further advised Glenn that in this hearing the court could rely on all types of evidence including live testimony but could also rely on reports that normally would not be used in a regular criminal trial. A46. Also, Judge Hall advised Glenn that the burden of proof was preponderance of the evidence which meant that "it is more likely true than not true that a violation occurred . . . ." A46. Defense counsel requested additional time to prepare for a hearing on the alleged violations. A47.

The parties reconvened for the continued revocation hearing on July 25, 2012. A53. At this hearing, Glenn argued that his guilty pleas, entered under the *Alford* doctrine, were insufficient to prove that he had committed another offense in violation of the mandatory supervised release condition. A60. As the district court noted in response, a defendant does not have to admit a violation of the condition, because the court can consider different kinds of evidence when deciding whether the defendant had committed another offense. A60. The court also noted that a defendant does not even have to be convicted of an offense, in other words, that the court could conduct and conclude a hearing on a violation of supervised release "before he ever went to state court and entered his plea." A60.

10

The government argued that the court could rely on the State court judgments and plea proceedings when deciding whether Glenn had committed another crime, because even though those documents were not admissions of the defendant, they demonstrated that in imposing a sentence, the State courts necessarily found that a crime had been committed and that the defendant had committed that crime. A71-72. The government further noted that the same result would arise after a defendant were convicted at trial; there would have been a finding made that a crime was committed and that the defendant had committed that crime. A72.

After hearing further argument, the court ruled on the question presented. The court found that Glenn's State court convictions were "finding[s], . . . judicial finding[s] that certainly that it is more likely true than not that Mr. Glenn committed the crime he was charged with in those two proceedings." A73-74. In other words, there was no need to hear witnesses about Glenn's conduct because his guilty pleas and the judicial findings were sufficient to establish that he had committed crimes. A74.

After determining that there was no need to resolve factual disputes related to the other alleged violations, the court notified Glenn that he faced a guidelines range of 30-36 months. A95. The court heard from Glenn and the lawyers, and explained the reasoning behind its sentenc-

11

ing decision. A95-111. With this background, the court sentenced Glenn to 36 months' imprisonment, with 15 of those months to run concurrently to the State term he was still serving. A112. The district court also imposed a two-year term of supervised release. A112.

## Summary of Argument

In a violation of supervised release proceeding, the district court properly concluded that Glenn's two State court drug convictions proved, by a preponderance of the evidence, that he had committed a crime in violation of the conditions of his supervised release. The standard of proof in a revocation proceeding is low, and indeed, a court does not even need to find that a defendant has been convicted of a crime to find that he has committed a crime. But here, where the defendant had in fact been convicted and sentenced for two crimes, it was eminently reasonable for the court to conclude that the defendant's convictions proved, by a preponderance of the evidence, that he had committed the crimes for which he was punished in State court.

The fact that Glenn entered his State court pleas under the *Alford* doctrine does not change the analysis. In an *Alford* plea, although the defendant does not admit all of the facts, he does admit that the State has enough evidence that he would likely be convicted at trial. That admission, when coupled with the State prosecu-

tor's recitation of the factual basis for the plea and the court's finding that there was a factual basis for the plea, establishes sufficient proof that the defendant committed the crimes underlying his convictions, even if the defendant would not admit all of the facts of those crimes.

Finally, under Connecticut law, a guilty plea under the *Alford* doctrine is considered the same as a non-*Alford* plea, and indeed is sufficient to establish a violation of State probation. Because *Alford* pleas may be considered in a probation revocation proceeding, the district court did not abuse its discretion to rely on Glenn's *Alford* pleas to support its conclusion that Glenn committed State crimes.

## Argument

## I. The district court did not abuse its discretion in finding that Glenn committed another crime when he had been convicted for two separate drug offenses in State court.

### A. Governing law and standard of review

A district court may revoke a term of supervised release and require a defendant to serve an additional term of imprisonment, if the district court "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3).

13

As the statute makes clear, an alleged violation of supervised release need only be proven by a preponderance of the evidence. *United States v. Carthen*, 681 F.3d 94, 99-100 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 837 (2013).

A district court's finding that a defendant has violated conditions of supervised release is reviewed for abuse of discretion, *United States v. Spencer*, 640 F.3d 513, 520 (2d Cir. 2011); *United States v. Marshall*, 371 F.3d 42, 45 (2d Cir. 2004), and its factual findings for clear error. *United States v. Thomas*, 239 F.3d 163, 168 (2d Cir. 2001); *United States v. Carlton*, 442 F.3d 802, 810 (2d Cir. 2006).

## B. Discussion

The district court properly exercised its discretion to conclude—by a preponderance of the evidence—that Glenn had committed a crime in violation of the conditions of his supervised release. The preponderance standard is a low threshold, and certainly lower than the beyond-a-reasonable-doubt standard applicable in criminal trials. Indeed, "'[t]o establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.'" *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) (quoting 4 L. Sand et al., Modern Federal Jury Instructions ¶ 73.01, at 73-4 (1997)); *see also United States v. Gigante*, 94 F.3d 53, 55 (2d Cir. 1996) ("The preponderance standard is no

14

more than a tie-breaker dictating that when the evidence on an issue is evenly balanced, the party with the burden of proof loses.").

Given the lower standard of proof applicable to revocation proceedings, a district court may find that a defendant has committed another crime even in the absence of a conviction for that crime. *See, e.g.*, *Carlton*, 442 F.3d at 810-11 (affirming finding that defendant violated supervised release by committing bank robbery even though the defendant had not been convicted of bank robbery); *see also United States v. Gordon*, 961 F.2d 426, 429 (3d Cir. 1992) (holding that a defendant need not be formally charged or convicted with drug possession for the conduct to be considered at a probation revocation hearing); *United States v. Chambers*, 429 F.2d 410, 411 (3d Cir. 1970) (per curiam) (upholding a revocation of probation despite defendant's subsequent acquittal of the state charges underlying the revocation).

Because a district court may find that a defendant has committed a crime even *without* a criminal conviction, common sense suggests that a district court should be able to rely on a defendant's *conviction* in a court of law as evidence that the defendant, in fact, committed the crime for which he was convicted. Indeed, it would be passing strange if a defendant who had pleaded guilty to a State offense—and been sentenced for that State offense—could argue that there was

15

insufficient evidence to prove by a preponderance of the evidence that he had committed the State offense. At a minimum, a district court does not abuse its discretion to conclude that the fact that a defendant has been punished by a State court for a criminal conviction constitutes proof, by a preponderance of the evidence, that he committed that crime.

The mere fact that a defendant's conviction, like Glenn's here, is entered as an *Alford* plea does not change the analysis. Under *Alford*, a defendant may plead guilty to a charged offense without admitting the facts of that offense, so long as there is a strong factual basis for the plea. *See Alford*, 400 U.S. at 38. In this type of plea, the defendant does not admit the facts of the offense, "'but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless.'" *State v. Faraday*, 842 A.2d 567, 588 (Conn. 2004) (quoting *State v. Daniels*, 726 A.2d 520, 522 n.2 (Conn. 1999), *overruled on other grounds*, *State v. Singleton*, 876 A.2d 1 (Conn. 2005)). Consistent with this practice, in both of the plea colloquies leading to Glenn's guilty pleas, he admitted that the State had enough evidence to convict him of the charged offenses. *See* A24-25 (admitting that there was "substantial likelihood that" he would be convicted at trial); A35 (admitting that "the State likely has enough evidence" to convict him at trial).

16

Here, Glenn's *Alford* pleas in Connecticut State court demonstrate more than sufficient evidence to prove—by a preponderance of the evidence—that he committed the crimes he pleaded guilty to. *First*, as set forth above, even if Glenn did not admit the facts underlying each of his convictions, he admitted that the State likely had sufficient evidence to convict him at trial. A24-25; A35. The district court was certainly well within its discretion to consider these admissions as evidence tending to show that Glenn had committed the crimes.

*Second*, during the colloquy for both of Glenn's pleas, the prosecutor recited a factual basis for the offense, identifying those facts the State would prove to establish the elements of the offense. *See* A22-23; A32. Based on this recitation, the trial court in each case made an express finding that there was a factual basis for the plea. A26; A38. Because the record was sufficient to convince a State trial court judge that the defendant had committed the charged crime, the district court could certainly rely on that judicial finding when determining whether Glenn had committed the charged crime. In sum, the judicial finding of a factual basis for Glenn's pleas, when coupled with Glenn's admissions that the State could prove the charges against him at trial, provided a sound record for the district court's conclusion, by a preponderance of

17

the evidence, that Glenn had committed the crimes.

*Third*, and significantly, under Connecticut law, an *Alford* plea is fully admissible to establish that a defendant has violated probation. Under Connecticut law,

> [t]he entry of a guilty plea under the *Alford* doctrine carries the same consequences as a standard plea of guilty. By entering such a plea, a defendant may be able to avoid formally admitting guilt at the time of sentencing, but he nonetheless consents to being treated as if he were guilty with no assurances to the contrary.

*Faraday*, 842 A.2d at 588; *see also Burrell v. United States*, 384 F.3d 22, 28 (2d Cir. 2004) (reviewing Connecticut law to conclude that "there is no reason to distinguish convictions so obtained [by *Alford* pleas] from those secured by standard guilty pleas or even jury verdicts."). Although Connecticut law draws no distinction between judgments entered on *Alford* pleas and judgments entered on "standard" pleas, it does partially limit the evidentiary uses that may be made of *Alford* and *nolo contendere* pleas. In particular, Connecticut law generally prohibits the use of these "non-standard" pleas as admissions of factual guilt in subsequent civil and criminal proceedings. *See Burrell*, 384 F.3d at 29-30 (describing Connecticut law). But despite this general rule, Connecticut law permits the

18

use of *Alford* pleas to establish whether a defendant has violated probation. *See Daniels*, 726 A.2d at 524. Indeed, in *Daniels*, the Connecticut Supreme Court "recognized that [a] defendant's conviction based on his *Alford* plea would establish a violation of the conditions of the defendant's probation . . . ."[4] In short, under Connecticut law, an *Alford* plea is fully admissible in precisely the context presented here, *i.e.*, in a probation revocation proceeding to determine whether a defendant has committed another crime.[5]

The fact that Connecticut considers an *Alford* plea as sufficient to establish the violation of a probation condition is significant because it explains why Glenn's reliance on the Third Circuit's decision in *United States v. Poellnitz*, 372 F.3d 562 (2004) is misplaced.[6] In *Poellnitz*, the

---

[4] The probation condition at issue in *Daniels* "required the defendant to obey all 'criminal law[s] of the United States, this state, or any other state or territory.'" 726 A.2d at 522. This condition, like the condition at issue in this case, does not turn on the fact of a conviction, but rather on whether the defendant "obeyed" all criminal laws, a standard directly analogous to the standard in this case, prohibiting a defendant from committing another offense.

[5] Consistent with this law, Glenn was expressly warned that his *Alford* plea could be used to establish that he had violated probation. *See* A24.

[6] Glenn also relies on the Ninth Circuit's decision in *United States v. Nguyen*, 465 F.3d 1128 (9th Cir.

19

Third Circuit reviewed a district court's conclusion that the defendant had violated the conditions of supervised release by committing a State offense. The Court held in that case that the district court erred in relying on the defendant's *nolo contendere* plea in Pennsylvania state court in reaching that conclusion. *Id.* at 565-70. According to the Third Circuit, the legal significance of the defendant's *nolo contendere* plea was governed by State law. *Id.* at 567 ("The critical question therefore is how Pennsylvania law regards the legal effect of the *nolo* plea that Poellnitz entered . . . ."). In particular,

> If Pennsylvania treats such a plea as a judgment of conviction, but not an admission of guilt, then that plea was entitled to no evidentiary weight at the revocation hearing.

---

2006), but that case does not help him. In that case, the question was whether a defendant's *nolo contendere* pleas were sufficient to prove—beyond a reasonable doubt—that the defendant had violated a statute that prohibited him from committing crimes while under supervision. *Id.* at 1130-31. The Court's holding that a *nolo* plea was "not by itself sufficient evidence to prove a defendant committed the underlying crime" has no bearing on the distinct question of whether an *Alford* plea, and the accompanying judicial finding of a factual basis for that plea, is sufficient to prove, by a preponderance of the evidence, that a defendant committed another crime.

20

On the other hand, if state law regards a *nolo* plea as constituting an admission or evidence of criminal conduct, then it was entitled to whatever weight the District Court chose to give it.

*Id.* Having identified the central question, the Third Circuit reviewed Pennsylvania law and determined that a Pennsylvania "*nolo* plea does not constitute an admission of factual guilt, and thus has no evidentiary value in assessing whether the defendant committed a crime." *Id.*; *see also id.* at 567-70.

This focus on the evidentiary significance of an *Alford* plea under State law is also seen in other cases that have *upheld* the use of *Alford* pleas in supervised release revocation proceedings. Thus, in *United States v. Verduzco*, 330 F.3d 1182 (9th Cir. 2003), the Ninth Circuit concluded, based on an analysis of the legal significance of a *nolo contendere* plea under California law, that the defendant's *nolo* plea to a State charge was sufficient to establish that the defendant had committed a crime in violation of his conditions of supervised release. *Id.* at 1184-86. *See also United States v. Dempsey*, 479 Fed. App. 935, 937-38 (11th Cir. 2012) (upholding a supervised release revocation based on a State charged *Alford* plea based on conclusion that under Georgia law, the plea was properly considered in this context); *United States v. Subil*, 495 Fed. App. 963, 971-72 (11th Cir. 2012) (rely-

21

ing in part on Florida law to conclude that the defendant's plea, whether it was an *Alford* plea or a standard plea, provided sufficient evidence to conclude that the defendant committed the crime charged).

Here, in Connecticut, as in Georgia and California, an *Alford* plea may be used in a revocation proceeding to establish that a defendant has committed another crime. Accordingly, the district court properly relied on Glenn's Connecticut convictions, entered under *Alford*, to establish that Glenn committed another crime. Because the same rule does not apply in Pennsylvania, *Poellnitz* is not to the contrary.

*Poellnitz* is distinguishable for the additional reason that in that case, the Third Circuit considered the narrow question whether the district court could consider the defendant's *nolo* plea as evidence of the defendant's commission of the underlying crime. That Court took pains to note, however, that on remand, the district court should determine whether there was sufficient evidence to conclude that the defendant committed a crime. 372 F.3d at 570. In so doing, the Third Circuit directed the district court to "take into account all evidence in the record, including, but not limited to, evidence presented at Poellnitz's plea hearing." *Id.* As described above, the district court in this case arguably did just that. The district court did not rely on the mere fact of the defendant's convictions, but rather al-

22

so relied upon the state trial judges' express findings that there was a factual basis for each plea. A73-74. Accordingly, on this record, the district court's findings were not an abuse of discretion.

Finally, this Court's decision in *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008) does not dictate a different result. In *Savage*, this Court considered whether a Connecticut drug conviction qualified as "controlled substance offense" as defined in the sentencing guidelines. The Court found that the Connecticut statute under which the defendant had pleaded guilty criminalized conduct that fell outside the guidelines definition of the offense, and thus, applied the "modified categorical approach" to determine whether the defendant's conviction "'necessarily' rested on the fact identifying the conviction as a predicate offense" (*i.e.*, a fact that put the offense within the narrower guidelines definition of "controlled substance offense"). *Id.* at 964-66. In conducting this inquiry, the Court identified evidence that it could consider from the plea colloquy to prove that a plea necessarily rested on predicate conduct: proof that the defendant "admitted predicate conduct," or proof that the charge was narrowed to include only predicate conduct. *Id.* Because the defendant had pleaded guilty under *Alford*, and thus did not admit any facts, the underlying conviction could not qualify as an admission of the defendant or as proof that

23

the offense had been narrowed to include predicate conduct. *Id.* at 966-67. In sum, this Court's decision in *Savage* stands for the unremarkable proposition that a court may not rely on an *Alford* plea to establish the precise *facts* underlying the relevant conviction.

Here, the district court did not use the *Alford* pleas or the plea colloquies to establish the precise facts of Glenn's convictions. Indeed, the precise facts of Glenn's convictions were not strictly relevant. Instead, the court merely recognized that the State court proceedings established that Glenn had committed crimes. And because that is all the court had to find, and because that finding could be based on a mere preponderance of the evidence, *Savage* has no bearing here.

In sum, the district court did not abuse its discretion to rely on Glenn's State court convictions, along with the judicial findings that there was a factual basis for those convictions, to conclude, by a preponderance of the evidence, that Glenn had committed a crime.

24

## Conclusion

For the foregoing reasons, the judgment of the district court should be affirmed.

Dated: November 1, 2013

Respectfully submitted,

DEIRDRE M. DALY
ACTING U.S. ATTORNEY
DISTRICT OF CONNECTICUT

MICHAEL E. RUNOWICZ
ASSISTANT U.S. ATTORNEY

Sandra S. Glover
Assistant United States Attorney (of counsel)

David Rosenblum
Student Intern

25

**Addendum**

**18 U.S.C. § 3583(e)(3)**

(e) Modification of conditions or revocation.--The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)—

\* \* \*

(3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case[.]

Add. 1

**GOVERNMENT APPENDIX**

Case 3:04-cr-00060-JCH    Document 562    Filed 10/19/05    Page 1 of 4

Page 1

UNITED STATES DISTRICT COURT
District of Connecticut

UNITED STATES OF AMERICA

V.

CHAS GLEN aka Junior

**JUDGMENT IN A CRIMINAL CASE**

CASE NO. *3:04cr60-008JCH*
USM NO: *16087-014*

*Michael Runowicz*
Assistant United States Attorney

*John Walkley (appointed)*
Defendant's Attorney

**THE DEFENDANT:** pleaded guilty to count <u>one of an information</u>

Accordingly the defendant is adjudicated guilty of the following offense(s):

| Title & Section | Nature of Offense | Offense Concluded | Count(s) |
|---|---|---|---|
| 21:846 | Conspiracy to Possess with Intent to Distribute More Than 5 Grams of Cocaine Base | February 24, 2004 | one |

The following sentence is imposed pursuant to the Sentencing Act of 1984.
The sentence imposed is a mandatory minimum guideline sentence.

**IMPRISONMENT**
The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total of 60 months.
The sentence on count one shall run consecutive to the state sentence the defendant is presently serving.

**SUPERVISED RELEASE**
Upon release from imprisonment, the defendant shall be on supervised release for a total term of 4 years. The Mandatory and Standard Conditions of Supervised Release as attached, are imposed. In addition, the following Special Conditions are imposed:
    1. The defendant shall participate in a program approved by the Probation Office for inpatient or outpatient substance abuse treatment and testing. The defendant shall pay all, or a portion of, the costs associated with treatment , based on the defendant's ability to pay as determined by the probation officer.
    2. The defendant shall participate in a mental health treatment program, inpatient or outpatient, as determined by the probation officer. The defendant shall pay all, or a portion of, the cost of treatment, based on the defendant's ability to pay as determined by the probation officer.

**CRIMINAL MONETARY PENALTIES**
The defendant must pay the total criminal monetary penalties under the schedule of payments (as follows) or (as noted on the restitution order).

**Special Assessment:**    $100.00  as to count one, due immediately

It is further ordered that the defendant will notify the United States Attorney for this district within 30 days of any change of name, residence or mailing address until all fines, restitution, costs and special assessments imposed by this judgment, are paid.

Count one of the indictment is dismissed on the motion of the United States.

GA1

**JUDICIAL RECOMMENDATION(S) TO THE BUREAU OF PRISONS**

The defendant shall participate in the 500 hour drug rehabilitation program.  The defendant shall receive a mental health assessment and treatment and counseling based on the results of the assessment.  The defendant shall receive all educational and vocational training available. The defendant shall be incarcerated at FCI Otisville, placement is secondary to participation in the drug treatment program.

The defendant is remanded to the custody of the United States Marshal.

_____        October 4, 2005
_____        Date of Imposition of Sentence

_____/s/Janet C. Hall_____
Janet C. Hall
United States District Judge
Date: October 17, 2005

**RETURN**

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____, with a certified copy of this judgment.

_____        _____
                                       John F. Bardelli
                                       United States Marshal

                                       By _____
                                               Deputy Marshal

**CERTIFIED AS A TRUE COPY
ON THIS DATE _____
Kevin F. Rowe, Clerk
BY: _____
     Deputy Clerk**

GA2

GA3

**CONDITIONS OF PROBATION/SUPERVISED RELEASE**

**In addition to the Standard Conditions listed below, the following indicated (■) Mandatory Conditions are imposed:**

■ (1)  The defendant shall not commit another federal, state or local offense;

■ (2)  The defendant shall not unlawfully possess a controlled substance;

☐ (3)  The defendant who is convicted for a domestic violence crime as defined in 18 U.S.C. section 3561(b) for the first time shall attend a public, private, or private non-profit offender rehabilitation program that has been approved by the court, in consultation with a State Coalition Against Domestic Violence or other appropriate experts, if an approved program is available within a 50-mile radius of the legal residence of the defendant;

■ (4)  The defendant shall refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on supervised release and at least two periodic drug tests thereafter for use of a  controlled substance;

☐ (5)  If a fine is imposed and has not been paid upon release to supervised release, the defendant shall adhere to an  installment schedule to pay that fine;

☐ (6)  The defendant shall (A) make restitution in accordance with 18 U.S.C. sections 2248, 2259, 2264, 2327, 3663, 3663A, and 3664; and (B) pay the assessment imposed in accordance with 18 U.S.C. section 3013;

☐ (7)  A defendant convicted of a sexual offense as described in 18 U.S.C. sections 4042(c)(4) shall report the address where the defendant will reside and any subsequent change of residence to the probation officer responsible for supervision, and shall register as a sex offender in any State where the person resides, is employed, carries on a vocation or is a student.

■ (8)  The defendant cooperate in the collection of a DNA sample from the defendant.

**While on supervised release, the defendant shall also comply with all of the following Standard Conditions:**

1.  The defendant shall not leave the judicial district or other specified geographic area without the permission of the court or probation officer;
2.  The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
3.  The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4.  The defendant shall support the defendant's dependents and meet other family responsibilities (including, but not limited to, complying with the terms of any court order or administrative process pursuant to the law of a state, the District of Columbia, or any other possession or territory of the United States requiring payments by the defendant for the support and maintenance of any child or of a child and the parent with whom the child is living);
5.  The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6.  The defendant shall notify the probation officer at least ten days prior to any change of residence or employment;
7.  The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance, or any paraphernalia related to any controlled substance, except as prescribed by a physician;
8.  The defendant shall not frequent places where controlled substances are illegally sold,  used, distributed, or administered, or other places specified by the court;
9.  The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10.  The defendant shall permit a probation officer to visit the defendant at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
11.  The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12.  The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13.  The defendant shall pay the special assessment imposed or adhere to a court-ordered installment schedule for the payment of the special assessment;
14.  The defendant shall notify the probation officer of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay any unpaid amount of restitution, fines, or special assessments.

**The defendant shall report to the Probation Office in the district to which the defendant is released within 72 hours of release from the custody of the U.S. Bureau of Prisons.   (Delete if not applicable)**

Upon a finding of a violation of probation or supervised release, I understand that the court may **(1)** revoke supervision **and impose a term of imprisonment**, **(2)** extend the term of supervision, and/or **(3)** modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed) _____

          **Defendant**                            **Date**

_____

          **U.S. Probation Officer/Designated Witness**         **Date**

GA4